## Christian Mylin's Case.

After an estate has been settled, and releases executed, followed by an acquiescence for a number of years, the accounts will not be opened: such settlements and releases are favoured by the courts, because they tend to repose and quiet.

APPEAL by Christian Mylin from the decree of the court of common pleas of *Lancaster* county, refusing to grant an attachment against Martin Mylin and Abraham Mylin, to compel them to settle their account as assignees of the said Christian Mylin, under a voluntary assignment for the benefit of his creditors.

The petition of Christian Mylin, humbly showeth: That your petitioner on the 1st day of November 1819, by his deed, called a deed of voluntary assignment, conveyed to his brothers, Martin and Abraham Mylin, of said county, all his real and personal estate, in trust to sell the same, and with the money arising from the sales, to pay the debts due by your petitioner to his creditors, according to the directions contained in the deed ; and the overplus moneys, if any, to pay to your petitioner: that the deed was accepted by Abraham and Martin Mylin, was put on record, and the trustees proceeded to execute the trust, by taking and selling the estate : that a sum exceeding 13,000 dollars, was made by the sales of the trust estate ; that Abraham and Martin Mylin have never exhibited into any of the courts, of said county, their account of their administration of his estate : no exhibit has ever been made to your petitioner of the amount of the money arising from his estate by the sales; nor any exhibit of the payment of his debts out of the same : that your petitioner has heard that his brothers, Abraham and Martin, allege they obtained from him in the year 1823, a release of his claims and rights under the same deed of voluntary assignment : that in answer to this allegation, your petitioner says that if such release was obtained by his brothers from him, it was procured by them in the absence of any account or exhibition of the settlement of his estate, and when he was ignorant of his right to call for information touching his estate, or the extent of it : that in the year 1818, your petitioner, from his pecuniary distresses and embarrassments, sunk into habits of intemperance, and from that time until 1833, his excessive use of ardent spirits, and other intoxicating drinks, entirely unfitted him to attend to and investigate his business affairs : that your petitioner believes his said trustees have in their hands a large sum of money, arising from the sale of his estate, beyond the sum called for to pay his debts : therefore, your petitioner, in pursuance of the

law passed the 14th June 1836, prays your honours to award a cita-
tion to Abraham and Martin Mylin, aforesaid, commanding them to
exhibit their account of his estate into your honourable court, on the
3d Monday of September next, at 10 o'clock, A. M., and then and
there abide the orders and decrees of this court, touching the premi-
ses, and he will pray, &c.

Citation issued 22d August 1836.

September 19, 1836; answer of Abraham and Martin Mylin to
the complaint of Christian Mylin:

To the honourable the judges of the court of common pleas of
Lancaster county.

The affidavit and answer of Martin Mylin and Abraham Mylin,
late trustees of Christian Mylin, under a voluntary assignment, dated
November 1, 1819,

Respectfully represents: that as trustees of said Christian Mylin,
they did, in pursuance of said deed, sell and dispose of all his real
and personal estate, and did pay off and discharge all the debts due
and owing by the said Christian to his several creditors, in full:

That after having paid all the debts of the said Christian, they
did at his request, and at the request of their deceased father, John
Mylin, and in the presence of the said Christian and John, some
time in the month of February, or in the beginning of March 1823,
exhibit all their papers and vouchers; and after a full settlement of
all matters, they, the said trustees, were found indebted to the said
Christian Mylin in the sum of 2040 dollars and 5 cents, which
they paid to him on the 5th day of March 1823, and took his gene-
ral release for the same, in full of all actions, suits, controversies, ac-
counts, reckonings and demands, whatsoever, relative to the said
trust, which said release is recorded in the office for recording of
deeds in and for the county of Lancaster, in book No. 24, page 456;
which said release is made part of this affidavit and answer: that this
course of settlement was adopted by these respondents at the instance
of said Christian Mylin, as he alleged, for the purpose of avoiding
the expenses necessarily incident to filing an account of their pro-
ceedings in court; which proceeding was also recommended by his
father, the said John Mylin deceased.

That the said Christian Mylin being fully satisfied with the pro-
ceedings of these respondents in the premises, and having fully re-
leased them, they supposed and believed that they had no further
use for their papers, vouchers, &c., many of which, if not all, are
lost or mislaid, and cannot, after diligent search made for them, be
found; or may be in possession of said Christian Mylin, as they be-
longed to him after settlement. These respondents also declare and
say that they cannot settle any account of their proceedings in the
premises, from recollection, after so long a time has elapsed. These
respondents deny that Christian Mylin has any right whatever to
apply for said citation according to the acts of assembly and the
circumstances of this case; and these respondents further deny, and

[Christian Mylin's Case.]

most explicitly declare and say, that they have no money or estate whatever in their hands, of the said Christian Mylin, under the said deed of assignment, since the 5th day of March 1823.

That in the district court for the city and county of Lancaster, these respondents were attached for refusing to settle an account on the estate of said Christian Mylin, and after full argument on the 20th and 21st days of October 1835, they were discharged, &c. They therefore pray that the citation issued against them by the court, on the 22d day of August, may be discharged, &c. and they will pray, &c.

The respondents gave proof of the facts stated in their answer, and exhibited the release mentioned.

The complainants gave a great deal of evidence tending to show that Christian Mylin was a drunkard, at the date of the release, and incompetent to do business ; but the result of all the evidence on that subject was, that he was an intemperate man, and sometimes fit and sometimes unfit to do business. The court below refused to grant the attachment, and made absolute the rule on behalf of the respondents to show cause why they should not be discharged from the citation.

*Norris*, for appellant, cited, 1 *Madd. Chan.* 100, 298, 262 ; 2 *Whart. Rep.* 494 ; 2 *Sch. & Lef.* 720 ; 9 *Cond. Chan. Rep.* 249 ; 3 *Cond. Chan. Rep.* 446 ; 4 *Serg. & Rawle* 112.

*Reigart*, for appellees, cited, 6 *Watts* 159.

The opinion of the Court was delivered by

Rogers, J.—After an estate has been settled, and releases executed, followed by an acquiescence, for a number of years, the accounts will not be opened. The presumption is, that every thing has been fairly and honestly done ; and such releases and settlements are favoured by the courts, because they tend to repose and quietness. But it is said, that relief against a release is given by courts of law and equity, in the same manner, as against other contracts, under particular circumstances ; as where it was obtained by fraud, or misrepresentation, or has been executed by one ignorant of his rights, and not in a situation to inform himself. So, where undue advantage is taken of the weakness or necessities of the party, or when there exists a confidential personal relation, as if obtained by a guardian from his ward shortly after coming of age, or by an attorney from his client, or by a trustee from his *cestui trust*. The exceptions are undoubtedly as well founded as the rule itself. The confidential relation spoken of certainly exists ; and if it appeared that there was fraud, or imposition, or a gross mistake, we should feel bound to decree an account. But having already allowed Christian Mylin the 1500 dollars, in the account against the executors of John Mylin, it does not clearly appear that there has

VII.—G 2

been either fraud, imposition, or a gross mistake. Taking the sales of the real and personal estate to amount to 13,835 dollars, and the payments to 12,802 dollars, there remains a balance of 1032 dollars. From this we must deduct the costs, charges and commissions for settling the estate, also the debts by simple contracts, which doubtless existed.

After these deductions are made, we cannot say that such a clear case has been exhibited, as would justify us in disturbing a settlement, after such a lapse of time. Fraud is not to be presumed; and no evidence has been given that can induce us to suppose, that in this transaction there has been any unfair dealing or practice. The settlement was made in the lifetime of the father, with his knowledge and assent. He, without doubt, would see justice done to his unfortunate son Christian. As, under all the circumstances, we think it would be a dangerous precedent to interfere with the settlements, it is ordered that the decree of the common pleas be affirmed.

Decree affirmed.